IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| Certain Underwriters at Lloyd's, | ) | |
| London, subscribing to Policy | ) | |
| No. 9640GAPKGPS, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| Reaching Souls Cathedral | ) | |
| of Praise, Mr. Bert Witham, and | ) | |
| The Ross Family Partnership, | ) | |
| | ) | |
|     Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COME NOW Plaintiff Certain Underwriters at Lloyd's, London, subscribing to Policy No. 9640GAPKGPS ("Underwriters"), by and through their attorneys, and, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, file this their Complaint for Declaratory Judgment against Reaching Souls Cathedral of Praise ("Reaching Souls"); The Ross Family Partnership ("Ross Partnership"); and Mr. Bert Witham ("Mr. Witham"), respectfully showing the Court the following:

## INTRODUCTION

1.

This action arises out of a January 28, 2013, fire loss at Reaching Souls' chapel (the "Fire Loss"). Underwriters seek a declaration that the insurance policy

to which each of them separately subscribed, Policy No. 9640GAPKGPS, for the policy period July 25, 2012 – July 25, 2013 (the "Policy"), is void *ab initio* as to all named Defendants, Reaching Souls, the Ross Partnership, and Mr. Witham due to material misrepresentations by Reaching Souls, Mr. Witham, and Mrs. McGinn in Reaching Souls' July 2012 insurance policy application (the "Application"), as well as in the associated underwriting process.  In the alternative and where the Policy is not rescinded and void *ab initio* to each of the named Defendants, Underwriters seek a declaration that the Policy does not provide coverage for the Fire Loss as to any of the named Defendants, and that Underwriters do not have an indemnity obligation to any of the named Defendants as a result.

## THE PARTIES

### 2.

Plaintiffs Underwriters are self-regulating entities, or syndicates, operating as an insurance market in the United Kingdom, with their principle place of business in the United Kingdom.  The syndicates, each of which severally subscribed to Policy No. 9640GAPKGPS (the "Policy"), are as follows: Omega Insurance Holdings Limited Syndicate 958 ("Canopius"), the lead syndicate,[1] with Amlin Underwriting–Syndicate 2001 ("Amlin") and Liberty Syndicate Management Limited, Syndicate 4472 ("Liberty") participating as leads; with the

---

[1]    On August 21, 2012, Canopius announced the completion of the acquisition of Omega Insurance Holdings Limited, and Omega's existing business platforms are integrated in Canopius.

following market comprising Hardy Group Syndicate 382 ("Hardy"), Aegis London Syndicate 1225 ("Aegis"), MSF Pritchard Syndicate 318 ("Beaufort"), Catlin Syndicate 2003 ("Catlin"), Hiscox Syndicate 33 ("Hiscox") and R. J. Kiln & Co. Limited Syndicate 510 ("Kiln") (collectively, "Underwriters"). Each syndicate acts on behalf of its respective subscribing Names, none of which is a citizen of the State of Georgia.

3.

Reaching Souls is a non-profit corporation organized under the laws of the State of Georgia and maintains a principal place of business in Macon, Georgia. Reaching Souls is a citizen of the State of Georgia within the meaning and intent of 28 U.S.C. § 1332. Reaching Souls is subject to the jurisdiction and venue of this Court. Upon information and belief, Reaching Souls may be served with process through its Chief Financial Officer, Evelyn Ross, at 3824 Gadson Street, Macon, Georgia 31204.

4.

Mr. Bert Witham is a citizen of the State of Georgia within the meaning and intent of 28 U.S.C. § 1332, and is subject to the jurisdiction and venue of this Court. He may be served with process at 112 Covington Place, Macon, Georgia 31210.

5.

On information and belief, the Ross Partnership is an unofficial and undocumented interest comprising Mrs. Evelyn Ross and Pastor Onslow Ross ("Pastor Ross"), both citizens of Georgia within the meaning and intent of 28 U.S.C. § 1332, which can be served, c/o Evelyn Ross, at 3824 Gadson Street, Macon, Georgia 31204.

## JURISDICTION AND VENUE

6.

Each plaintiff is a citizen of a different state from each defendant. As is more fully set out below, the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Therefore, this Court has jurisdiction by virtue of 28 U.S.C. § 1332.

7.

This Court is the proper venue for this declaratory judgment action pursuant 28 U.S.C. § 1391 because Reaching Souls is located in this judicial district;  Mr. Witham resides in this judicial district; Mrs. Ross, the principal of Ross Family Partnership, resides in this judicial district; and the Fire Loss giving rise to this matter occurred in this judicial district.

8.

Underwriters seek a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, which grant the United States District Courts jurisdiction to declare the "right and other legal relations of any interested parties seeking such declaration, whether or not further relief is or could be sought."

## UNDERLYING FACTS

9.

Reaching Souls is a church congregation that was located at 5555 Bethesda Avenue, Macon Georgia, 31216 (the "Bethesda Avenue Property"), on January 28, 2013, the day of the Fire Loss.

10.

Upon information and belief, Reaching Souls originally acquired the Bethesda Avenue Property in December 2003, from Bethesda Avenue Baptist Church.  At the time of purchase, the property included the original smaller church chapel (the "Chapel").

11.

Subsequently, on or around December 11, 2006, Reaching Souls mortgaged the Bethesda Avenue Property for $2,550,000 entering into a Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement (the "Deed and Assignment") with Foundation Capital Resources, Incorporated ("Foundation

Capital") as well as executing an Adjustable Rate Secured Note in favor of Foundation Capital, in the amount of $2,550,000.  A true and correct copy of the Warranty Deed, dated December 31, 2003; Deed to Secure Debt, Assignment of Leases and Rents, And Security Agreement, dated Dec. 11, 2006; and Adjustable Rate Secured Note, dated December 11, 2006, are attached hereto as Exhibit "A."

12.

Pursuant to the Deed and Assignment, Reaching Souls assigned to Foundation Capital all insurance proceeds on the Property, "and all causes of action, claims, compensation awards and recoveries for any damage, condemnation or taking of all or any party of the Property of for any damage or injury to it or for any loss of diminution in value of the Property."  *See* Ex. "A," 1.3 Assignment of Proceeds.

13.

Upon information and belief, in or around November 2006, Mr. Witham, the current mortgagee and named Defendant herein, and his daughter who manages his business interests and acts on his behalf, Mrs. Brenda McGinn, met Reaching Souls' senior pastor, Pastor Ross, and began providing financial assistance to Reaching Souls.  *See* Examination Under Oath ("EUO"), Mrs. Brenda McGinn, dated June 25, 2013, attached hereto as Ex. "B," pp. 9:20 – 10:22.

14.

Upon information and belief, on March 27, 2007, Mr. Witham purchased the mortgage note for Reaching Souls from Foundation Capital, in the amount of $762,817.54, and Foundation Capital transferred and assigned its interest in the Deed to Secure Debt, dated December 11, 2006, to Mr. Witham.   A true and correct copy of the Assignment, dated March 27, 2007; corresp. from B. McGinn to Lexington Mortgage Capital Corp., dated Dept. 26, 2007; and Restated Promissory Note, dated May 1, 2008, are attached hereto as Exhibit "C"; *see also* Ex. "B," 22:23-25.

15.

Upon information and belief and prior to the Fire Loss, Reaching Souls and Mr. Witham completed the construction of a new larger sanctuary (the "New Sanctuary") also located on the Bethesda Avenue Property, which remained incomplete until on or around January 13, 2013, when it received its certificate of occupancy.  *See* Ex. "B," p. 14:23-25.

16.

On January 28, 2013, a fire damaged Reaching Souls' Chapel.

17.

Upon information and belief, on January 29, 2013, Georgia's Office of the Insurance Commissioner determined that the fire was intentionally set and was arson.

### Reaching Souls' Application for Insurance And Inspection

18.

On behalf of Mr. Witham, Mrs. McGinn managed various aspects of Reaching Souls and the Bethesda Avenue Property, including Reaching Souls' insurance matters. *See e.g.* Ex. "B," pp. 28:21-30:11; 68:20-70:6; 77:13-78:6.

19.

Mrs. McGinn also worked closely with Mr. Witham's and Reaching Souls' retail agent, Mr. Bill Scarbrough of Scarbrough Insurance Agency, Inc. ("Mr. Scarbrough"), to obtain and maintain insurance for Reaching Souls. *See* Ex. "B," 79:25-82:6.

20.

On July 25, 2012, Reaching Souls submitted its commercial package insurance policy application (the "Application") through Mr. Scarbrough, who submitted the Application signed by himself and Mrs. McGinn to Underwriters' coverholder, North Point Underwriters Inc. ("North Point").  A true and correct copy of the Application, dated July 25, 2012, is attached hereto as Exhibit "D."

21.

The Application sought general liability coverage in the amount of $1,000,000 per occurrence; and property coverage to include $1,000,000 building coverage as well as $1,547,000 personal property coverage. *See id.*

22.

The property coverage was only for the Chapel and did not include coverage for the unfinished New Sanctuary also located on the Bethesda Avenue Property. *See id.*

23.

The Application listed additional interests to include Mr. Bert Witham, at 112 Covington Place, Macon, Georgia 31210, as a "Mortgagee"; and the Ross Family Partnership, at 146 McClain Circle, Macon, Georgia 31216, as a "Loss Payee." *See id.*

24.

The Application's "General Information" question No. 6., asked whether Reaching Souls had "ANY POLICY OR COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE PRIOR THREE (3) YEARS?" In response, the Application's answer was "No." *See id.* This answer was a material misrepresentation.

25.

The Application's "General Information" question No. 8., asked "DURING THE LAST FIVE YEARS HAS ANY APPLICANT BEEN INDICTED FOR OR CONVICTED OF ANY DEGREE OF THE CRIME OF FRAUD … IN CONNECTION WITH THIS OR ANY OTHER PROPERTY?" The Application's answer was "No." *Id.* This answer was a material misrepresentation.

26.

The Application's "General Information" question No. 8., asked "ANY BANKRUPTCIES, TAX OR CREDIT LIENS AGAINST THE APPLICANT IN THE PAST FIVE (5) YEARS." The Application's answer to this question was "No." *Id.* This answer was a material misrepresentation.

27.

The Application also included a loss history section, which did not identify any losses for Reaching Souls or state amounts paid for any occurrences or claims. *Id.* This was a material misrepresentation.

28.

The Application's "Storefront/Community Church Product Application," question no. 16, asked "[h]as the organization or any of its past or present directors, officers, trustees, committee members, employees, volunteers or others

acting on behalf of the organization ever been accused of or been involved in a lawsuit, claim or criminal charge involving sexual abuse, sexual misconduct or sexual molestation."  The Application's answer to this question no. 16 was "No." *Id.* This answer was a material misrepresentation.

29.

The Application's documents reflect the signature of Mrs. McGinn, as the "AUTHORIZED REPRESENTATIVE OF THE APPLICANT[,]" who "REPRESENTS THAT REASONABLE [I]NQUIRY HAS BEEN MADE TO OBTAIN THE ANSWER TO QUESTIONS ON THIS APPLICATION.  HE/SHE REPRESENTS THAT THE ANSWER ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE."  *Id.*

30.

An inspection of the Property was conducted on behalf of Underwriters on or around September 6, 2012, which revealed that the Chapel was protected with a central station fire alarm and burglary alarm, but the burglary alarm was not currently activated.   A true and correct copy of the Inspection Report is attached hereto as Exhibit "E."

31.

After receipt of the property inspection report, North Point followed up with Mrs. McGinn and advised that for coverage to be effectuated: the Chapel's fire

11

extinguishers must be serviced, and the central burglary alarm system must be reactivated.  A true and correct copy of the e-mail correspondence between North Point, Scarbrough Agency, and B. McGinn, between September 13th through October 29, 2012, is attached hereto as Exhibit "F."

32.

In direct response, Mrs. McGinn agreed in writing that she spoke with Mrs. Ross, who would "reactivate both the fire and burglar[y] alarm systems as well as handle the fire extinguishers."  *See id.*, E-mail from B. McGinn, dated September 20, 2013.  Upon information and belief, there was no central alarm system of any kind - burglary or fire alarm - activated at the Chapel at the time of the Fire Loss.

33.

Based on the Application's answers provided by Reaching Souls and Mrs. McGinn in response to the Application's questions, as well as Mrs. McGinn's additional express representations to North Point that both the fire and burglary alarm systems would be reactivated and fire extinguishers serviced, the Policy was approved and bound for the requested property building limits of $1,000,000 and personal property limits of $1,547,000.

34.

Further, in or around September, 14, 2012, Mrs. McGinn advised Mr. Scarbrough that the Chapel was over-insured, as the Chapel's rebuild was half the

existing property limits, or $500,000; and the contents inside were worth $50,000-$75,000 at most despite the fact that the personal property limits were $1,547,000. A true and correct copy of the e-mail correspondence from Mrs. McGinn to Mr. Scarbrough, dated Sept. 14, 2012, is attached hereto as Exhibit "G."  Mr. Scarbrough responded that the limits were provided by Mrs. Ross and Pastor Ross. *Id.*

### The Fire

35.

Upon information and belief, in the weeks prior to the Fire Loss, Mr. Witham and Mrs. McGinn were in discussions with another minister and congregation not associated with Reaching Souls to lease-to-own the entire Bethesda Avenue Property, including the Chapel and the New Sanctuary. *See* Ex. "B," pp. 99:24-105:5.

36.

Upon information and belief, Mr. Witham, Mrs. McGinn, and their counsel discussed their intentions to lease the Bethesda Avenue Property to another congregation with Reaching Souls and its associates, including Mrs. Ross and Pastor Ross, and further requested that Reaching Souls sign over the Deed so that Mr. Witham could move forward with the new congregation.  *See id.*

37.

Upon information and belief, Pastor Ross and Mrs. Ross, on behalf of Reaching Souls, strongly opposed Mr. Witham's intentions to lease the Bethesda Avenue Property to another congregation. *See id.*

38.

Upon information and belief, Pastor Ross communicated with Mr. Witham via telephone at least two (2) separate times expressing his strong opposition to Mr. Witham's intentions regarding the future of the Bethesda Avenue Property, as he wanted to remain senior pastor there. *See id.*

39.

Upon information and belief, Mrs. Ross finally agreed to take Mr. Witham's proposal before Reaching Souls' congregation on that Sunday, January 28, 2013, and the Chapel burned that evening. *See id.*

40.

A Property Loss Notice (the "Loss Notice"), dated the day of the Fire Loss, January 28, 2013, reports that the "Insured's building caught fire, doing extensive damage to the building and its contents." A true and correct copy of the Property Loss Notice, Jan. 28, 2013, is attached hereto as Exhibit "H." The Loss Notice states that the "name of contact" is "Reaching Souls;" the "contact mailing address

is Brenda McGinn, at P.O. Box 6438, Macon, Georgia, 31208;" and the loss was reported by Mr. Witham to Mr. Scarbrough. *Id.*

41.

On or about March 19, 2013, Mr. Witham initiated a dispossessory proceeding, case styled *Bertram H. Witham, Jr. v. Reaching Souls Cathedral of Praise Apostolic Church, Inc.*, Superior Court of Bibb County, Georgia, Civil Action No. 13-CV-58957 (the "Dispossessory Action"), in which a default judgment was entered against Reaching Souls in the amount of $5,690,143 plus interest at the rate of $1,003 per diem from June 1, 2013 and costs of the action. *See* Disposs. Action Pleadings, attached hereto as Exhibit "I."

42.

On March 26, 2013, Underwriters issued a full reservation of rights to Reaching Souls and Mr. Witham, c/o Mrs. McGinn, via certified mail, return receipt requested and regular United States mail.  A true and correct copy of the Reserv. of Rights, dated March 26, 2013, is attached hereto as Exhibit "J."

43.

On April 5, 2013, upon locating Mrs. Ross, Underwriters sent a supplemental reservation of rights letter, to the attention of Reaching souls, c/o Mrs. Ross, Mrs. McGinn and Mr. Witham, which also included a separate letter requesting that each appear for their respective EUOs and enclosed a blank proof

of loss, forwarded certified U.S. mail, return receipt requested, and regular U.S. mail.  A true and correct copy of the Supp. Reserv. of Rights and EUO Requests, dated April 5, 2013, is attached hereto as Exhibit "K."

44.

Mrs. Ross's April 5, 2013, package sent certified mail was returned as "unclaimed," though the package sent regular U.S. mail never returned as an incorrect address or otherwise, and, upon information and belief, was delivered to Mrs. Ross.

45.

In or around May 2013, a public adjuster, Mr. Richard West of Goodman-Gable-Gould Adjusters International ("Mr. West"), contacted the independent adjuster retained on behalf of Underwriters, Mr. Wayne Steele of the Bridgewater Group, and advised of his representation of Mrs. Ross.

46.

Soon thereafter, on May 21, 2013, and June 11, 2013, with which undersigned counsel for Underwriters forwarded copies of the April 5, 2013, reservation of rights and EUO request package, Underwriters' contacted Mr. West, in an effort to schedule the EUO of Mrs. Ross.  A true and correct copy of the e-mail corresp. from S. Farrell, Esq. to R. West, dated May 21, 2013, and June 11, 2013, with e-mail attachments, are attached hereto as Exhibit "L."

47.

On June 13, 2013, via UPS overnight delivery and U.S. regular mail, undersigned counsel for Underwriters, again, sent correspondence to Mr. West as Underwriters' fourth request for Mrs. Ross to provide documents previously requested in preparation for her EUO, and then requested that Mrs. Ross appear for her EUO on June 25, 2013.  A true and correct copy of this Corresp. from S. Farrell, Esq. to R. West, dated June 13, 2013, is attached hereto as Exhibit "M." Mr. West did not respond to the request for documents or provide Mrs. Ross's availability on June 25, 2013, or otherwise, for her EUO.

48.

On June 24, 2013, undersigned counsel received correspondence via facsimile from an attorney, Mr. John T. Mitchell, Jr. ("Mr. Mitchell"), advising of his potential representation of Mrs. Ross and agreeing to contact the undersigned to schedule an EUO, should he be retained. A true and correct copy of this corresp. from J. Mitchell, Esq. to S. Farrell, Esq., dated June 24, 2013, is attached hereto as Ex. "N."  Mr. Mitchell never followed up with undersigned counsel.

49.

On May 3, 2013, counsel for Mr. Witham and Mrs. McGinn submitted a proof of loss sworn to by both Mr. Witham and Mrs. McGinn, with a cover letter stating that "[i]f no sworn statement has been filed [on] behalf of the Church, also

consider this a protective filing for the Church." A true and correct copy of the Corresp. from H. Lovein, Jr., Esq. to S. Farrell, Esq., dated May, 3, 2013, and a true and correct copy of the Proof of Loss are attached hereto as Exhibit "O".

50.

The proof of loss stated that the Actual Cash Value of the Chapel was $1,100,000; the whole loss and damage was $1,000,000; and the amount claimed was $995,000. *See* Ex. "O."

51.

Mrs. McGinn appeared for her EUO, on June 25, 2013.

52.

On July 9, 2013, Mr. Lovein, as counsel for Mrs. McGinn and Mr. Witham, demanded payment of $995,000 within sixty (60) days, the failure of which they alleged would result in the imposition of an additional 50% bad faith penalty and the imposition of all attorneys' fees incurred in the prosecution of an action against Underwriters. A true and correct of Corresp. from H. Lovein, Jr., Esq., to S. Farrell, Esq., dated July 9, 2013, is attached hereto as Exhibit "P."

**The Policy**

53.

The Policy's mortgageholder clause provides:

**2.      Mortgageholders**

18

* * *

**b.**     We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

* * *

**d.**     If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Party, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1)     Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2)     Submits a signed, sworn proof of loss within 60 days, after receiving notice from us of your failure to do so; and

(3)     Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

A true and correct copy of the Policy is attached hereto as Exhibit "Q."

54.

By endorsement, the Policy identifies the Ross Partnership as a loss payee having interest in Premises No. 1, Building No. 1, "Description of Property" identified as "church." The endorsement lists the applicable loss payee clause as "C.", which provides:

19

### C. Loss Payable Clause

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:
1.  Adjust losses with you; and
2.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

*See id.*

50.

The Policy sets forth certain exclusions, including loss or damage caused by, or resulting from:

\* \* \*

**h.**   Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)**   Acting alone or in collusion with others; or
**(2)**   Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

*See id.*, Exclusion "h."

56.

The Policy's Commercial Property Conditions, includes in relevant part:

This Coverage Part is subject to the following conditions:

* * *

**A.      CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  is it also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;
**2.** This Covered Property;
**3.** Your interest in the Covered Property; or
**4.** A claim under this Coverage Part.

*See id.*, Commercial Prop. Conditions, "A."

## COUNT I – DECLARATORY RELIEF ON RESCISSION

57.

Underwriters incorporate herein by reference each of the allegations contained in Paragraphs 1 through 56 above.

58.

Underwriters seek a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that the Policy is rescinded and void *ab initio* as to each Defendant, and,

therefore, Underwriters have no obligation to provide coverage and indemnify any Defendant for the January 28, 2013, Fire Loss at issue.

59.

Reaching Souls and Mrs. McGinn, as Mr. Witham's agent, made multiple material misrepresentations on the Application.  Each and every misrepresentation by Reaching Souls and Mrs. McGinn was material to the acceptance of the risk and the hazard assumed by Underwriters.

60.

Had Reaching Souls, Mrs. McGinn, or Mr. Witham answered the Application questions truthfully, Underwriters would not in good faith have either issued the Policy, or would have charged a higher premium for same.

61.

Additionally, had Underwriters known that Reaching Souls and Mrs. McGinn, on behalf of Mr. Witham, did not do as they expressly agreed to do and reactivate the central fire and burglary alarm systems, Underwriters would not in good faith have either issued the Policy, or would have charged a higher premium for same. *See* Ex. "F."

62.

As a result of the material misrepresentations by Reaching Souls, Mr. Witham and Mrs. McGinn, Underwriters are entitled to a rescission of the Policy

as to each Defendant; as well as a declaration that the Policy is void *ab initio* and that Underwriters have no obligation to provide coverage for any claims submitted by any Defendant under the Policy.

63.

Here, the Ross Family Partnership, as a Loss Payee under the Policy's Loss Payee clause, has no greater interest in the loss payment than Reaching Souls, and, therefore, a rescission and avoidance of the Policy extinguishes the Policy as to the Ross Family Partnership as well, precluding the Ross Partnership's receipt of policy proceeds.

64.

Additionally, material misrepresentations of Reaching Souls are also material misrepresentations by the Ross Partnership, as the two interests share the same principal and agents.  As a result, the Ross Partnership was involved in the wrongdoing and material misrepresentations on which the rescission of the Policy is based.

65.

Likewise, since the Policy is void *ab initio* under Georgia law and rescission is an abrogation or undoing of the contract from the beginning, the Policy is rescinded and void *ab initio* as to Mr. Witham, the mortgagee, as a matter of law.

66.

In the alternative and even assuming *arguendo* that the Policy is not rescinded and void as to Mr. Witham's mortgagee interest as a matter of law due to the fact that the entire Policy is void and rescinded, Underwriters are entitled to a separate rescission of any mortgagee contract Mr. Witham had with Underwriters under the Policy,  as that separate contract (if it existed at all) is also void *ab initio*, since Mrs. McGinn, Mr. Witham's agent, was directly involved in the material misrepresentations made through the Application and underwriting process for the Policy.

67.

Underwriters, therefore, have no duty to indemnify any named Defendant for any part of the Fire Loss, as the Policy is rescinded and void *ab initio* extinguishing the rights of any and all named Defendants.

## COUNT II

## ALTERNATIVELY, UNDERWRITERS HAVE NO DUTY TO INDEMNIFY BASED ON THE DEFENDANTS' BREACH OF THE POLICY'S CONDITIONS

68.

Underwriters incorporate herein by reference each of the allegations contained in Paragraphs 1 through 67 above.

24

69.

In the alternative, Underwriters have no coverage obligation to indemnify any named Defendant for the Fire Loss, as the Defendants breached the Policy's Commercial Property Condition "Concealment Misrepresentation or Fraud" which provides:

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  is it also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;
**2.** This Covered Property;
**3.** Your interest in the Covered Property; or
**4.** A claim under this Coverage Part.

70.

Reaching Souls, Mrs. McGinn, and Mrs. McGinn on behalf of Reaching Souls and Mr. Witham, intentionally concealed and misrepresented multiple material facts concerning the Property Coverage Part, the Covered Property, and the particular January 28, 2013, Fire Loss claim, itself.

71.

Additionally, the Policy's mortgageholder clause provides:

**2.    Mortgageholders**

\* \* \*

**b.**    We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

\* \* \*

**d.**    If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Party, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1)    Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2)    Submits a signed, sworn proof of loss within 60 days, after receiving notice from us of your failure to do so; and

(3)    Has notified us of any change in ownership, occupancy or substantial change in risk known to    the mortgageholder.

**All of the terms of this Coverage Part will then apply directly to the mortgageholder**.

*See* Ex. "Q," 2. Mortageholder (emphasis added).

72.

Based on the Mortgageholder clause, all of the terms of the Property Coverage Part apply directly to the mortgageholder, including but not limited to Policy's Commercial Property Conditions, "A. Concealment, Misrepresentation or Fraud."

73.

Mr. Witham, including by and through his agent, Mrs. McGinn, intentionally concealed and misrepresented material facts concerning the Property Coverage Part and the Covered Property, through Mrs. McGinn's multiple misrepresentations in the Application and the underwriting process.

74.

Mr. Witham, including by and through his agent, Mrs. McGinn, intentionally concealed and misrepresented material facts concerning this particular Fire Loss claim under this Coverage Part, when Mr. Witham, himself, swore to and submitted a proof of loss for $995,000, after his agent, Mrs. McGinn, previously stated in writing that the rebuild of the Chapel was no more than $500,000 at most. Mrs. McGinn and Mr. Witham have submitted no documents in support of this proof of loss to date by way of contract repair estimates, or otherwise.

75.

Pursuant to the Policy's "Concealment, Misrepresentation or Fraud" Condition, applicable to Reaching Souls and Mr. Witham, the Policy is void to each of them, and Underwriters have no indemnity obligation for the Fire Loss claim to either Mr. Witham or Reaching Souls.

76.

As a "Loss Payee" under the Policy, the Ross Partnership has no greater rights under the Policy than Reaching Souls.  Accordingly, where the Policy is void as to Reaching Souls based on the "Concealment, Misrepresentation or Fraud" Condition, it is also void as to the Ross Partnership.

**COUNT III – IN THE ALTERNATIVE, UNDERWRITERS HAVE NO DUTY TO INDEMNIFY DEFENDANTS AS THE CLAIM IS NOT COVERED BY THE POLICY DUE TO REACHING SOULS' CRIMINAL ACT OF ARSON OR INVOLVEMENT IN ARSON**

77.

Underwriters incorporate herein by reference each of the allegations contained in Paragraphs 1 through 76 above.

78.

In the alternative, Underwriters are entitled to a declaration that the Fire Loss is not a covered claim under the Policy, and Underwriters have no duty to

indemnify the Defendants, to the extent Reaching Souls' committed arson or was involved in arson.

79.

In Georgia, an insurer can deny coverage due to arson when there is arson by someone; motive by the suspect; unexplained surrounding circumstantial evidence implicating the suspect; and that evidence exists showing an opportunity on the part of an insured who has a motive to commit arson.

80.

Here, the fire was of incendiary origin.  Reaching Souls, its principals, and its associates were still in possession of the Bethesda Avenue Property at the time of the Fire Loss.  Reaching Souls' principals and its associates had the opportunity and motive to set the fire at the Chapel for monetary gain as well as to serve their other independent interests – namely, Reaching Souls' interest in preventing Mr. Witham and Mrs. McGinn from leasing the Bethesda Avenue Property to another church congregation.

81.

Additionally, the Chapel burned on the evening of the day that Mrs. Ross agreed to take Mr. Witham's request for the Deed before the Reaching Souls' congregation, January 28, 2013.

82.

Underwriters, therefore, ask for a declaration that there is no coverage under the Policy for the Fire Loss to Reaching Souls.

83.

In addition, the Policy further excludes loss or damage caused by, or resulting from a:

* * *

    **h.**    Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

        **(1)**    Acting alone or in collusion with others; or
        **(2)**    Whether or not occurring during the hours of employment.

    This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

84.

In the instance of a criminal and dishonest act of arson by or through the involvement of Reaching Souls, by Pastor Ross, Mrs. Ross, their associates and/or their agents, and based on the "Dishonest Act" exclusion, the Policy expressly excludes the Fire Loss from coverage.  The Policy was never intended to provide coverage for a criminal act such as arson by a named insured.

85.

Accordingly, the Fire Loss is not and has never been a "**covered** loss of or damage to buildings" within the purview of the Policy's mortgageholder clause, through which the mortgageholder may receive payment. *See* Ex. "Q," 2. Mortgageholders (emphasis added).

86.

As the Fire Loss is not a "covered" loss and expressly excluded from the Policy, the Fire Loss is not within the purview of the Policy's mortgageholder clause and not within any separate contract created by the Policy with Underwriters and Mr. Witham, as the mortgagee, if any separate contract exists at all.

87.

Thus, Underwriters have no indemnity obligation to any named Defendant with respect to the Fire Loss.

WHEREFORE, Underwriters pray of this Honorable Court as follows:

A.        That this court rescind Policy No. 9640GAPKGPS and declare the Policy void *ab initio*, as to Reaching Souls and the Ross Family Partnership;

B.        That this court rescind Policy No. 9640GAPKGPS and declare the Policy void *ab initio*, as to Mr. Witham;

C.　　　　In the alternative, where the court does not rescind Policy No. 9640GAPKGPS to each Defendant and declare it void *ab initio*, that this Court declare that the Fire Loss is not covered by the Policy as to any Defendant, and Underwriters have no indemnification obligation to any named Defendant as a result; and

D.　　　　That Underwriters receive such other relief as this Court deems just and proper.

Respectfully submitted this 6th day of September 2013.

*/s/* Stacey S. Farrell
Kenan G. Loomis
Georgia Bar No. 457865
Stacey S. Farrell
Georgia Bar No. 255877
COZEN O'CONNOR
Suite 2200, SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA  30308-3264
Telephone: 404-572-2000
Facsimile: 877-728-1396
Email:kloomis@cozen.com
　　　　 ssfarrell@cozen.com

*Attorneys for Plaintiff Certain Underwriters at Lloyd's, London, Subscribing to Policy No. 9640GAPKGPS*