**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **CERTAIN UNDERWRITERS AT** | ) | |
| **LLOYD'S LONDON, subscribing to** | ) | |
| **Policy No. 940GAPKGPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:13-CV-325 (MTT)** |
| | ) | |
| **BERT WITHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

Plaintiff Certain Underwriters at Lloyd's London ("Lloyd's") and Defendant and

Counterclaimant Bert Witham ("Witham") have filed cross-motions for summary judgment.

(Docs. 74; 77).  For the reasons stated below, Lloyd's motion is **DENIED in part and**

**GRANTED in part**.  Witham's motion is **DENIED**.

## I.      BACKGROUND

This case arises from a dispute regarding Lloyd's obligations to Witham pursuant to

an insurance policy (the "Policy") covering certain property located at 551 Bethesda

Avenue, Macon, Georgia ("Bethseda Avenue property") that was destroyed by a fire on

January 28, 2013.  The Policy named Reaching Souls Cathedral of Praise as the insured,

the Ross Family Partnership as the loss payee, and Witham as the mortgage holder.

(Doc. 33-1 at 1).  It is undisputed Witham's daughter, Brenda McGinn, acted as Witham's

agent during the relevant events.[1]  The evidence before the Court reveals the following

disputed and undisputed facts.

---

[1] Although Witham disputes "as stated" Lloyd's statement that "McGinn manages Mr. Witham's business
interests and acts on his behalf" because she only handles "some" of Witham's interests and only

## A. Pre-Fire

In December 2003, Reaching Souls, pastored by Onslow Ross, acquired the Bethseda Avenue property and then mortgaged the property in 2006. (Docs. 75, ¶¶ 2, 4; 94, ¶¶ 2, 4). In 2007, Witham loaned money to Reaching Souls for the completion of a new sanctuary. (Docs. 78, ¶ 10; 98, ¶ 10). Witham then purchased the mortgage note from the previous mortgage holder, and the note and the loans to Reaching Souls were consolidated into a promissory note. (Docs. 8-3; 75, ¶ 5; 94, ¶ 5; 98, ¶¶ 9-10). According to Witham, the agreement between him and Reaching Souls required Reaching Souls to maintain property insurance coverage. (Doc. 41-1 at 29:2-5).

In 2008, Pastor Onslow Ross was convicted of a federal offense and sentenced to prison. (Doc. 78, ¶ 13; 94, ¶ 13). Thereafter, Reaching Souls's congregation dwindled and with it the church's financial resources. (*Id.*). As a result, Reaching Souls was unable to pay its debt obligation to Witham and the insurance premiums for the Bethseda Avenue property. Witham testified that after he learned a previous insurance policy was about to lapse, he contacted insurance agent Bill Scarbrough for help acquiring insurance for Reaching Souls's property. (Doc. 41-1 at 28:14-29:5). Scarbrough, however, testified in his deposition that Evelyn Ross, Pastor Ross's mother, first contacted him to request insurance. (Doc. 42-1 at 40:3-17). In any event, Scarborough procured insurance for Reaching Souls for several years, and a series of emails indicate Scarbrough also communicated with Witham and McGinn about his efforts to obtain insurance. (Docs. 42-7; 42-8; 42-31; 42-39; 42-49; 42-64).

"sometimes" acts on his behalf, Witham does not specifically dispute that McGinn was acting as Witham's agent during the relevant events. (Docs. 75, ¶ 16; 94, ¶ 16). Further, it is evident from Witham's briefing that he does not dispute McGinn acted as his agent during the relevant events.

In April 2012, after receiving notice another insurance company was cancelling coverage due to non-payment of premiums, McGinn testified she "became involved on behalf of [her] father in regard to the matter of the church's insurance coverage for the property" and "requested Mr. Scarbrough to be sure to keep [her] informed concerning the insurance coverage." (Docs. 75-6; 77-2, ¶ 11).  After several insurance companies declined to issue coverage, Scarborough obtained insurance through Chubb Insurance Company, and Witham paid the initial premium.  (Doc. 77-2, ¶ 13).  Witham and McGinn deny that Scarbrough obtained these previous insurance policies on Witham's behalf. (Docs. 75, ¶ 59; 94, ¶ 59).

**B. Insurance Application with Lloyd's**

In June 2012, Chubb provided notice that it was cancelling coverage effective July 25, 2012.  (Docs. 42:1 at 154:20-157:19; 42-30).  Despite this cancellation, McGinn testified that Witham continued to fund the completion of the new sanctuary, and Scarbrough began looking for replacement coverage before the Chubb policy lapsed. (Doc. 77-2, ¶¶ 15-16).[2]  The parties dispute the extent to which McGinn was involved with Scarbrough's efforts to obtain insurance.  (Doc. 75, ¶ 19; 94, ¶ 19).

On July 9, 2012, Scarborough submitted an insurance application to Lloyd's.  (Doc. 8-4).  It is undisputed that the application only sought coverage for the actual cash value of the property.  (*Id.*).  Three pages of the application include McGinn's signature as the applicant.  (*Id.* at 2, 17-18).  The parties dispute whether McGinn actually signed the application.  Scarborough initially testified in his deposition that McGinn signed the

---

[2] Lloyd's moves to strike portions of paragraph 15 of McGinn's affidavit as inadmissible hearsay  and moves to strike various portions of paragraphs 15 and 16 on the basis the statements do not set out facts "supported by admissible evidence" and were "not made on personal knowledge." (Docs. 97 at 12; 98 at 31). The Court does not rely on the statements in paragraph 15 that Lloyd's moves to strike.  Lloyd's general objection that these paragraphs are not based on personal knowledge and are not supported by facts that would be admissible is **OVERRULED**.

application but later testified in an affidavit and at a hearing that he signed McGinn's name to the application without her authorization.  (Docs. 42-1 at 189:24-190:2; 57 at 2; 63 at 37:20-38:7).  McGinn in her affidavit denied signing the application.  (Doc. 77-2, ¶ 18).

Scarborough testified in his deposition that he answered the questions in the application based on answers in previous insurance applications for Reaching Souls and that he was provided the information in these previous applications by Evelyn Ross.  (Doc. 42-1 at 182:10-23; 187:1-188:18; 244:7-23).  Scarbrough also testified that Witham had signed a previous insurance application, but McGinn and Witham deny that they were involved in the application process for the previous policies or that Witham had signed a previous application.  (Docs. 41-1 at 31:8-12, 37:25-38:4; 42-1 at 131:10-15, 134:23-25; 77-2, ¶ 13).

On July 25, 2012, Lloyd's agreed to bind coverage through July 25, 2013.  After the Policy was issued, Scarbrough submitted a hazard report on which he signed Witham's name as the insured; Witham never objected to Scarbrough's signing his name.  (Docs. 42-1 at 209:10-24).  On September 6, 2012, Lloyd's inspected the property.  (Doc. 8-5).  McGinn was present at this inspection and was listed on the inspection report as the "interview contact name" and "Financier."  (Docs. 8-5; 77-2, ¶ 19).  Thereafter, McGinn emailed Scarborough Insurance Agency regarding the limits of the insurance coverage, stating she "finally had the time to really look at [the Policy]. …  There is absolutely NO WAY the old building should be insured for $1,000,000 (rebuild is probably half that)."  (Doc. 42-39 at 4).

After the inspection, Lloyd's informed Scarbrough's agency that the annual servicing of the fire extinguishers was a "mandatory recommendation" and that rates may have to be increased if the central burglar alarm system was not activated.  (Docs. 8-5; 8-6).  This

information was emailed to McGinn who replied that "[Evelyn Ross was] going to reactivate both the fire and burglar alarm system as well as handle the fire extinguishers."  (Doc. 8-6 at 3).  After another email, McGinn replied that she would talk with Evelyn Ross about the matter because "Mrs. Ross [was] supposed to have had this done" and "if necessary, [McGinn would] take care of it [herself]" and "have everything the insurance company needs completed."  (*Id.* at 6).  The parties dispute whether the central alarm system was activated at the time of the fire and thus whether McGinn's statements constitute material misrepresentations.  (Docs. 77-2, ¶ 22[3]; 94, ¶ 95).

### C. The Fire and Proof of Loss

On January 28, 2013, a fire occurred at the Bethesda Avenue property.  (Docs. 78, ¶ 1; 98, ¶ 1).  On May 3, 2013, Witham, through his counsel, submitted a proof of loss sworn to by both Witham and McGinn.  (Doc. 8-16).  At the beginning of the proof of loss, Witham stated that Lloyd's "[a]t the time of loss, … insured the interest of Bert Witham and Reaching Souls … against loss by fire to the property described."  (*Id.* at 2).  Elsewhere in the proof of loss, Witham indicated that he was the mortgage holder, and no other person had an interest in the insured property.  (*Id.*).  Although confusing, the proof of loss states the actual cash value of the Bethesda Avenue property was "$1,000,000 and $100,000." (*Id.*).  Finally, Witham stated that "[t]he said loss did not originate by any act, design or procurement on the part of your insured, or this affiant."  (*Id.*).  In addition to filing the proof of loss, McGinn submitted to an examination under oath conducted by Lloyd's counsel. [4] (Doc. 38-9).

---

[3] Lloyd's moves to strike certain statements in paragraph 22 of McGinn's affidavit as based on speculation and presumptions.  (Doc. 97 at 12-13).  The Court does not rely on the challenged statements.

[4] Lloyd's seeks to use McGinn's examination under oath ("EUO") testimony in lieu of deposition testimony, in part, to demonstrate that Scarbrough was Witham's agent.  Lloyd's has moved to strike McGinn's affidavit as a sham affidavit because McGinn's explanation that Scarbrough was not acting as Witham's legal agent

## D.  Procedural Background

Lloyd's denied Witham's claim and then filed this lawsuit seeking rescission of the Policy against Reaching Souls, the Ross Family Partnership, and Witham.  (Doc. 8). Witham filed a counterclaim seeking a declaration that he is entitled to coverage under the Policy.  (Doc. 10).  The Court entered a default judgment against Reaching Souls and the Ross Family Partnership on November 15, 2013, declaring that the Policy was rescinded and void *ab initio* as to these Defendants.  (Doc. 15).  In its motion for summary judgment, Lloyd's contends it is entitled to a declaration that (1) it can rescind the Policy because Witham through his agents McGinn and Scarbrough made material misrepresentations; (2) alternatively, Witham's material misrepresentations on the sworn proof of loss void his coverage; (3) alternatively, the fire loss was not a covered loss; and (4) alternatively,

---

contradicts her prior EUO "testimony."  Pursuant to the sham affidavit rule, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656, 657 (11th Cir. 1984).  Typically, the subsequent affidavit contradicts previous deposition testimony.  It is doubtful an EUO can, in every respect, be treated as a deposition given the procedural differences between the two. *See Zavakos Enters., Inc. v. St. Paul Surplus Lines,* 2006 WL 83502, at *3 n.2, *6 (S.D. Ohio) (explaining the differences).  In any event, Lloyd's  has failed to meet its heavy burden to show that exclusion under the sham affidavit rule is warranted.  *See In re Stand "N Seal,* 636 F. Supp. 2d 1333, 1335 (N.D. Ga. 2009). Specifically, Lloyd's has  failed to show there is no explanation for any alleged contradiction, and moreover, McGinn has sufficiently explained the purported contradiction.  Any differences between her statements are "discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir. 1986).  Accordingly, Lloyd's motion to strike McGinn's affidavit as a sham affidavit is **DENIED**.  (Doc. 97).  Lloyd's also moves to strike specific statements in McGinn's affidavit as inadmissible hearsay or speculation and moves to strike the affidavit as prejudicial.  (Doc. 97 at 9-14).  The Court has not relied on those challenged statements, and the Court does not find the affidavit prejudicial.

Witham has also objected to the filing of the transcript of McGinn's EUO as discovery.  (Doc. 53). Again, the Court doubts an EUO can in every way be used just as a deposition can be used.  However, given that McGinn went to the EUO instead of Witham, she undoubtedly acted as Witham's agent, and at her EUO, she testified to matters concerning her assistance as an agent to Witham during the events that are the subject of this lawsuit.  (Doc. 38-9).  Thus, the EUO would likely be admissible as an admission by a party opponent pursuant to Fed. R. Evid. 801(d)(2).  Accordingly, Witham's objection is **OVERRULED**.  (Doc. 53).

Finally, Lloyd's has moved for discovery sanctions pursuant to Fed. R. Civ. P. 37(c)(2) because of Witham's failure to admit that McGinn was represented by counsel at her EUO.  (Doc. 55).  In his response to the Request for Admission, Witham's counsel stated that the request calls for an admission to a legal conclusion given the differences between an attorney's role in a deposition and in an EUO.  Given these differences, the Court does not agree that sanctions are warranted against Witham for his denial that McGinn was represented by counsel at her EUO.  At the very least, Witham "had a reasonable ground to believe that [he] might prevail on the matter."  Fed. R. Civ. P. 37(c)(2)(C).  Accordingly, Lloyd's motion for sanctions is **DENIED**.  (Doc. 55).

Witham's coverage is limited to the actual cash value of the buildings and structures damaged in the fire.  (Doc. 76 at 3-4).  Witham has filed a cross-motion for summary judgment on his counterclaim for a declaratory judgment that he, as an innocent mortgage holder, is entitled to coverage under the Policy.  (Doc. 77).  He also seeks indemnity for the actual cash value of the buildings and structures and the buildings' contents destroyed in the fire, demolition costs, and prejudgment interest.  (Doc. 77).

## II.    DISCUSSION

### A.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Id.*  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment."  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438).  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of

its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict.  *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. ... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 940, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show … that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it

will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted).  The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.  *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

### B.  Whether Witham Is an Innocent Mortgage Holder

Lloyd's contends Witham, as a matter of law, is not an innocent mortgage holder. Conversely, in his motion for summary judgment, Witham contends he is.  The "mortgageholder clause" in the Policy is a New York standard mortgage clause, pursuant to which, under Georgia law, "the mortgagee is protected even if the insured does something to invalidate the mortgage" because the "clause creates a separate and distinct contract between the mortgagee and the insurance company." *In re Alexander*, 329 B.R. 919, 923 (M.D. Ga. 2005) (citing *Am. Cent. Ins. Co. v. Lee*, 273 Ga. 880, 548 S.E.2d 338, 340 (2001)); *S. Gen. Ins. Co. v. Key*, 197 Ga. App. 290, 398 S.E.2d 237, 238 (1990)); *see also AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1307 (11th Cir. 2015).  However, because the standard mortgage clause represents an independent contract and thus is "subject to the same limitations to which all contracts are subject," a mortgage holder's own acts and omissions may void coverage under the mortgage clause.  *See Morris Cty.*

*Nat'l. Bank v. John Deere Ins. Co.*, 254 F.3d 538, 541 (5th Cir. 2001); *Citizens St. Bank of Dickinson v. Am. Fire & Casualty Co.*, 198 F.2d 57, 60 (5th Cir. 1952).[5]

It is undisputed Scarbrough procured insurance for Reaching Souls's property and filled out the application with the alleged material misrepresentations.  (Doc. 57).  The question is whether Scarbrough filled out the application as Witham's agent or as Reaching Souls's agent.  If he was Witham's agent, the purported material misrepresentations are imputed to Witham.  "Under Georgia law, actual agency arises whenever a person expressly authorizes another to act for him or subsequently ratifies the acts of another made in his behalf."[6]  *Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Ga.*, 337 F. Supp. 3d 1339, 1349 (N.D. Ga. 2004) (citing *Stallings v. Sylvania Ford-Mercury, Inc.,* 242 Ga. App. 731, 533 S.E.2d 731 (2000)).  "The existence of agency may be proven by showing circumstances, apparent relations, and conduct of the parties."  *Id.* at 1350 (citation omitted); *see also Kinard v. Nat'l Indemnity Co.,* 225 Ga. App. 176, 178, 483 S.E.2d 664, 666 (1997).  Where an agency relationship does exist, an agent's knowledge is imputed to the principal pursuant to Georgia law.  *See Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 431, 469 S.E.2d 199, 201 (1995).

It is clear there are genuine disputes of fact whether Scarbrough was acting as Witham's legal agent and thus whether Witham is an innocent mortgage holder.  Witham himself testified that he first contacted Scarbrough in 2010 for the purpose of obtaining insurance for Reaching Souls's property.  (Doc. 41-1 at 28:14-26:6).  Further, Scarbrough testified that he had "no doubt that [he] had the authority" to procure insurance because he "was given payments to institute coverage."  (Doc. 42-1 at 190:3-14).  And Witham testified

---

[5] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[6] The parties agree that Georgia law applies.

he made these payments, as well as Scarbrough's broker fees.  (Doc. 41-1 at 29:15-18, 34:6-14).  Also, Scarbrough communicated with Witham and McGinn about insurance coverage issues before and after Lloyd's issued the Policy.  (Docs. 42-7; 42-8; 42-31; 42-39; 42-49; 42-64).  For example, Scarbrough sent McGinn an email in which he asked for "one of you to come by … so we can get coverage reinstated" under the Chubb policy by "call[ing] in a payment."  (Doc.42-64 at 1).  In her EUO, McGinn described Scarbrough as "our agent" and stated that "he was going to take care of the [the insurance] because that's what agents do."  (Doc. 38-9 at 4:17-25; 40-1 at 82:15-83:2, 90:10-24).  Scarbrough also testified that after Lloyd's bound coverage, he signed Witham's name as the insured to a hazard report with no objection by either Witham or McGinn.  (Docs. 42-1 at 209:10-24; 42-48).

Witham and McGinn, on the other hand, maintain that their involvement and communications with Scarbrough were for the sole purpose of protecting Witham's interest as the mortgage holder, and they otherwise did not authorize Scarbrough to procure insurance as their legal agent.  (Docs. 41-1 at 36:8-10; 77-2, ¶ 10).  *See Ga. Farm Mut. Ins. Co. v. First Fed. Savings & Loan Ass'n of Statesboro*, 152 Ga. App. 16, 16, 20, 262 S.E.2d 147, 148, 150 (1979).  Scarbrough also testified in his deposition that only Reaching Souls as the insured, and not Witham as the mortgage holder, had the authority to instruct him what to include in an insurance application.  (Doc. 42-1 at 247:16-248:4).  Indeed, Scarborough testified in his deposition that he answered the questions in the application based on answers in previous insurance applications for Reaching Souls and that he was provided the information in these previous applications by Evelyn Ross.  (Doc. 42-1 at 182:10-23; 187:1-188:18; 244:7-23).

No doubt Lloyd's thought it had put the last nail in Witham's claim when Scarbrough testified in his deposition that McGinn signed the application containing the misrepresentations as Witham's "authorized representative." (Doc. 42-1 at 189:24-190:2, 192:13-21). But Scarbrough then testified in a subsequent affidavit and at a hearing that, in fact, he signed McGinn's name to the application.[7] (Docs. 57 at 2; 63 at 37:20-38:7). Consequently, there is clearly a genuine disputed fact whether McGinn signed the application.[8]

In sum, there is a genuine factual dispute whether Scarbrough was Witham's legal agent and whether McGinn, Witham's undisputed agent, signed the application, and thus neither Lloyd's nor Witham is entitled to summary judgment on whether Witham is an innocent mortgage holder.[9]

---

[7] The Court convened the hearing because it was concerned about the dramatic change in Scarbrough's testimony. Based on Scarbrough's explanation, the Court declined to strike his affidavit. (Doc. 56). Whether Scarbrough will be a credible witness at trial is another matter.

[8] To support his argument that McGinn did not sign any insurance application documents, Witham has offered the testimony of Arthur Anthony as a handwriting expert. Lloyd's has moved to preclude Anthony's expert testimony as irrelevant pursuant to Fed. R. Civ. P. 402. (Doc. 73). Lloyd's argues that whether Scarbrough or McGinn signed the application is irrelevant because Scarbrough was Witham's legal agent. Because Lloyd's has failed to establish as a matter of law that Scarbrough was Witham's agent, whether McGinn signed the application is relevant to whether Witham is an innocent mortgage holder.

Lloyd's also challenges the admissibility of Arthur's testimony pursuant to Fed. R. Civ. P. 702. Lloyd's argues that Anthony's testimony is unreliable because he did not sufficiently explain the methodology underlying his analysis and because Anthony used copies of electronically stored images of signatures instead of originals. As to methodology, the Court is satisfied Anthony's testimony is sufficiently reliable. (Doc. 51 at 69:7-23, 72:7-24, 75:15-76:25, 80:7-84:20, 89:25-93:1, 105:15-106:11). Although Anthony in his deposition generally describes his comparison method, he specifically demonstrates the reliability of his method by giving a "detailed explanation as to exactly how [he] evaluated the documents and drew his conclusions." *See Dracz v. Am. General Life Ins. Co.*, 426 F. Supp. 2d 1373, 1379-90 (M.D. Ga. 2006). Further, that Anthony used copies instead of originals for his comparison "should go to the weight of his testimony, but should not bar its admission, completely." *Wolf v. Ramsey*, 253 F.Supp.2d 1323, 1346 (N.D. Ga. 2003). Accordingly, Lloyd's motion to preclude the expert testimony of Arthur Anthony is **DENIED**. (Doc. 73).

[9] Lloyd's also argues that McGinn made material representations regarding the central alarm system by representing that she would handle the alarm's activation if Evelyn Ross did not. (Docs. 8-6; 76 at 8). McGinn stated in her EUO that she had not activated the burglar alarm system at the time of the fire. (Doc. 8-2 at 151:23-153:16). Although Lloyd's did not state this activation was a "mandatory recommendation" like the servicing of the fire extinguishers, it did state the activation of the central alarm system could affect premium rates because of the increased risk to the insurer. (Docs. 8-6; 75-3, ¶¶ 48-49). Thus, Lloyd's argues the misrepresentation was material, as stated by Matthew Burkett, an underwriter who was

### C.  Whether the Alleged Material Misrepresentations in the Proof of Loss Preclude Witham's Coverage[10]

Lloyd's also argues it is entitled to summary judgment because Witham's alleged material misrepresentations on his proof of loss preclude Lloyd's indemnity obligations to him.  Witham does not move for summary judgment on this issue, but responds "[t]here simply is no factual basis whatsoever" that Witham intentionally concealed or misrepresented a material fact in the proof of loss.  (Doc. 93 at 13).   Under Georgia law, misrepresentations on a proof of loss must be material and made with the intent to defraud the insurer to void coverage under the policy.  *Am. All. Ins. Co. v. Pyle*, 62 Ga. App. 156, 160, 8 S.E.2d 154 (1940)).  "[M]ateriality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question."  *Woods v. Indep. Fire Ins. Co.*, 749 F.2d 1493, 1496 (11th Cir. 1985) (citing *Long v. Ins. Co. of N.*

---

personally involved with the underwriting process.  (Doc. 75-3, ¶¶ 48-49).  Witham responds that: (1) McGinn had no duty as a representative of the mortgage holder to ensure the central alarm system was activated; (2) there is no evidence it had not been activated by Evelyn Ross at the time of the fire; and (3) even if the alarm system had not been activated, that was Reaching Souls's failure as the insured.  (Doc. 77-1 at 21).  Further, Witham questions the materiality of this alleged misrepresentation because it was not a condition under the Policy and only the servicing of the fire extinguishers was listed as a "mandatory recommendation."  Given all of this, there is clearly a genuine dispute of fact regarding this alleged material misrepresentation. Accordingly, Lloyd's is not entitled to summary judgment on this issue.

[10] Lloyd's contends: "Regardless of rescission, Witham cannot recover under the Policy for the following two reasons: (1) Witham personally and through his agent made material misrepresentations in the proof of loss; and (2) the Policy's exclusion for criminal or dishonest acts preclude coverage."  (Doc. 76 at 14).  The Court addresses the "proof of loss" argument more fully above, but addresses the second argument here as it pertains to the alleged misrepresentations in the proof of loss.  Specifically, Lloyd's argues Witham's intentional concealment and misrepresentations of material facts in the proof of loss violated the Policy's "Concealment, Misrepresentation or Fraud" condition.  This condition voids coverage when the insured "intentionally conceal[s] or misrepresent[s] a material fact" regarding "[t]his Coverage Part[,] the Covered Property[,] Your interest in the Covered Property[,] or A claim under this Coverage Part."  (Doc. 33-1 at 52).  Witham responds that this condition did not apply to him as the mortgage holder at the time the proof of loss was filed pursuant to the mortgage clause.  The Court agrees.  The mortgage clause provides that if Lloyd's denies Reaching Souls's claim for its acts or its failure to comply with the terms of the Coverage Part, "all of the terms of this Coverage Part will *then* apply directly to the mortgageholder."  (*Id.* at 20 (emphasis added)). Because Lloyd's had not denied coverage to Reaching Souls at the time the proof of loss was filed, the provision was inapplicable to him.  Nevertheless, as discussed more fully below, the intentional misrepresentation of a material fact on a proof of loss can void coverage, just as Lloyd's "Concealment, Misrepresentation or Fraud" condition does.  Accordingly, whether Witham's coverage under the Policy is void is determined by the same considerations.  The Court addresses Witham's intent and the materiality of the alleged misrepresentations more fully above.

*Am.*, 670 F.2d 930, 934 (10th Cir. 1082)).  As to intent, whether a "claim was fraudulently

or innocently made [is] a question of fact peculiarly within the province of the jury."

*Camden Fire Ins. Ass'n v. Penick*, 2 F.2d 964, 965 (5th Cir. 1924).  However, as a matter

of law, where there is "no evidence that the misstatements in the proof of loss were

fraudulent," the insurer cannot rely on the misstatements in the proof of loss to void

coverage under the policy.  *See Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655

F.2d 598, 601 (5th Cir. 1981).

Lloyd's has asserted Witham intentionally made three material misrepresentations.

First, Lloyd's claims Witham intentionally misrepresented that he alone had an insurable

interest in the property when, in fact, Reaching Souls did as well.  This argument is

specious.  Witham stated in the proof of loss that Reaching Souls also had an insurable

interest in the property: "[a]t the time of loss, … [Lloyd's] insured the interest of Bert

Witham and Reaching Souls … against loss by fire to the property described."  (Doc. 8-16

at 2).  Moreover, Lloyd's obviously knew that its insured had a potential interest in the

property.  Accordingly, Lloyd's is not entitled to summary judgment on this issue.[11]

Second, Lloyd's argues Witham intentionally made a material misrepresentation as

to the claimed loss amount.  (Doc. 76 at 13-14).  Witham does not argue this alleged

misrepresentation was immaterial; rather, he contends there is no evidence that he

intentionally made the misrepresentation to defraud Lloyd's.  In the proof of loss, Witham

stated the actual cash value of the property was "$1,000,000 and $100,000," the "whole

---

[11] The Court does not interpret Witham's motion to have moved for summary judgment on this issue.
However, given that the very document on which Lloyd's relies acknowledges Reaching Souls's insurable
interest, it is unlikely the issue will reach the jury.  Also, Lloyd's attempt to invoke *Woods v. Independent Fire
Insurance Co.*, 749 F.2d 1493 (11th Cir. 1985), actually illustrates the near frivolousness of this argument.  In
*Woods*, the plaintiff seeking coverage under the policy concealed that he had no insurable interest in the
property because he had conveyed the property to his mother.  *Id.* at 1496.  Here, Lloyd's knew all along that
Reaching Souls was potentially in the mix, and, of course, Witham clearly had an insurable interest in the
property.

loss and damage" was "$900,000+$100,000," and the "amount claimed" was $995,000.00. (Doc. 8-16).  There is no precise explanation of what this means in the record, but Witham testified he assumed the amount claimed was calculated from the "face amount of the policy, less the $5,000 deduction."  (Docs. 8-16; 41-1 at 59:12-16).  At the time, there was a factual basis for this.  A month before Witham filed the proof of loss, a building contractor appraised the loss at Witham's request.  (Doc. 27-2).  The contractor determined the *replacement cost* of the buildings destroyed in the fire to be $1,222,816.19.  (Docs. 27-2; 75-35).  McGinn testified that she and Witham were unaware until Scarbrough's deposition that the Policy provided coverage only for the actual cash value of the covered property. (Doc. 77-2, ¶ 28).  The contractor then reappraised the actual cash value of the loss to be $498,093.26, and Lloyd's apparently agrees that this is the actual cash value.[12]  (Docs. 75, ¶ 145; 75-35; 94, ¶ 145).

Lloyd's has provided evidence that before the proof of loss was filed, McGinn, in an email to Scarbrough on September 14, 2012, stated she had read the Policy and that "[t]here is absolutely NO WAY the old building should be insured for $1,000,000 (rebuild is probably half that)."  (Doc. 42-39 at 4).  This evidence suggests McGinn may have understood the buildings and structures damaged in the fire were worth significantly less than the claimed amount.  However, McGinn explains that (1) she "had no actual knowledge at that time and did not investigate what the actual value of the buildings …

---

[12] It is undisputed the value of the buildings and structures are based on their actual cash value: "Defendant does not dispute that the applicable measure of the loss of the church buildings and structures destroyed in the fire is 'actual cash value.'"  (Doc. 89 at 5 n.2).  Lloyd's has moved to preclude certain expert testimony of Shawn Stafford regarding the replacement cost value of the buildings as irrelevant.  (Doc. 71).  Lloyd's recognizes in its motion that the formula for determining the actual cash value requires the calculation of the replacement cost value.  Thus, the Court disagrees the testimony is irrelevant.  Lloyd's also challenges the reliability of Stafford's testimony pursuant to Fed. R. Evid. 702.  However, it is clear from Stafford's supplemental report that he calculated the actual cash value of the property by the same method Lloyd's recognizes as proper.  (Doc. 71-2).  Accordingly, Lloyd's motion is **DENIED**.  (Doc. 71).

might be"; (2) the amounts claimed "were based on [their] understanding of the approximate value of the insured buildings" destroyed; (3) the $900,000.00 loss estimate for the building was based on an appraisal done years prior; and (4) they were unaware coverage for the insured property was for the actual cash value and not the replacement cost value. (Doc. 77-2, ¶¶ 23, 26).[13]  Given this conflicting evidence, there is a genuine dispute whether Witham's obviously nonspecific estimate was a misrepresentation made with fraudulent intent.  *See OSA Healthcare, Inc. v. Mt. Vernon Fire Ins. Co.*, 975 F. Supp. 2d 1316, 1321-22 (N.D. Ga. 2013).  Accordingly, Lloyd's is not entitled to summary judgment on this issue.

Finally, Lloyd's argues Witham made a material misrepresentation when he said that the loss did not originate by the act of the insured, or "this affiant."  (Doc. 76 at 16). Lloyd's points to circumstantial evidence that agents of Reaching Souls were responsible for the fire.  Further, McGinn testified in her affidavit that shortly after the fire, two federal agents told her they suspected the Ross family started the fire for financial gain.  (Doc. 77-2, ¶ 24).  There is no evidence in the record that any member of the Ross family or agent of Reaching Souls was indicted or convicted for arson.  In any event, Lloyd's has not provided evidence to establish that either Witham or McGinn had such knowledge that Reaching Souls committed arson that would have required them to affirmatively represent that the loss was caused by an act of the insured.[14]  Suspicions are insufficient to establish

---

[13] Lloyd's has moved to strike certain statements in paragraph 23 of McGinn's affidavit as inadmissible hearsay and speculative legal conclusions.  (Doc. 97 at 13).  The Court does not rely on any of those challenged statements.

[14] Contending it has met the prima facie case for arson, Lloyd's alternatively argues that it is has no obligation to Witham because the mortgage clause only provides for "covered" losses, and loss from a fire caused by an insured's act of arson is not a covered loss pursuant to the Policy's Criminal Acts Exclusion. (Doc. 76 at 15-18).  This too is specious.  Even assuming Lloyd's has established a prima facie case for arson, the Court disagrees that the Policy's Criminal Acts Exclusion as to the insured operates to exclude coverage as to an innocent mortgage holder under a standard mortgage clause.  Again, pursuant to a

as a matter of law that Witham made a material misrepresentation with the intent to defraud Lloyd's.  Accordingly, Lloyd's is not entitled to summary judgment on this issue.

### D.  Whether the Policy Provides Witham Coverage for the Business Personal Property

If Witham can recover under the policy, Lloyd's argues that, pursuant to the mortgage clause, he can recover only under the Buildings and Structures Coverage of the policy.  In his motion for summary judgment, Witham claims that he can also recover under the Business Personal Property Coverage.  The Policy's mortgage clause provides the following:

> 2. Mortgageholders
> b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear
> d. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:
> (1) Pays any premium that under this Coverage Part at our request if you have failed to do so;
> (2) Submits a signed, sworn proof of loss within 60 days, after receiving notice from us of your failure to do so; and
> (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.
> All of the terms of this Coverage Part will then apply directly to the mortgageholder.

---

standard mortgage clause, the mortgage holder's right to coverage is not affected by the acts or omissions of the insured.  As the very case cited by Lloyd's stated, "rather than creating coverage for an excluded risk in the first instance, the mortgageholder clause operates to maintain coverage for the mortgageholder when the property owner's acts violate a duty or obligation associated with the insurance contract resulting in violation of or invalidation of the policy."  *Waterstone Bank, SSB v. Am. Family Mut. Ins. Co.*, 832 N.W.2d 152, 155 (Wis. App. 2013).  The *Waterstone* decision cites a Supreme Court of Kansas decision in which the supreme court addresses the same issue here.  *Iron Horse Auto, Inc. v. Lititz Mut. Ins. Co.*, 156 P.3d 1221, 1239-30 (Kan. 2007).  In *Iron Horse*, the insurer, like Lloyd's, argued it was not obligated to indemnify the mortgage holder because a criminal acts exclusion in the policy excluded "all obligation for it to pay anyone in the event the insured property is intentionally and criminally destroyed by the Named Insured."  *Id.* at 1229. Emphasizing that the policy included a standard mortgage clause, the supreme court squarely rejected the insurer's argument: "It is difficult to perceive how a provision could be more clear in telling a named insured and the listed mortgageholder that the mortgagee gets paid, even if the insured commits arson."  *Id.*; *see also In re Alexander*, 329 B.R. at 920-23.  For the same reasons, the Court concludes the same here. Accordingly, Lloyd's is not entitled to summary judgment on the grounds the fire loss was not a covered loss as to the mortgage holder because of the purported arson by the insured.

(Doc. 33-1 at 20).  Witham argues the last paragraph under section 2.d.—"All of the terms of this Coverage Part will then apply directly to the mortgageholder" (the "'all-terms' paragraph")—permits him to recover insurance proceeds pursuant to provisions that would have otherwise only applied to the insured, namely the "Building and Personal Property Coverage Form."  (Doc. 33-1 at 8).  Lloyd's contends section 2.b. of the mortgage clause clearly demonstrates the clause was intended to limit the mortgage holder's coverage to the actual cash value of the building and structures.

Pursuant to Georgia law, "the interpretation of an insurance policy, including the determination and resolution of ambiguities, is a question of law for the court to decide." *Giddens v. Equitable Life Assurance Soc. of United States*, 445 F.3d 1286, 1297 (11th Cir. 2006).  "[I]n attempting to ascertain the intentions of the parties, insurance contracts are governed by the ordinary rules of construction applicable to other contracts."  *Se. Atl. Cargo, etc. v. First State Ins. Co.*, 197 Ga. App. 371, 372, 398 S.E.2d 264, 265 (1990).  "[A]n insurance policy must be construed as a whole, and all of the provisions should be so interpreted so as to harmonize with the other."  *Chanin v. Tharrington*, 222 Ga. App. 890, 890, 476 S.E.2d 651, 652 (1996) (internal quotation marks and citation omitted).

As discussed, the Policy's mortgage clause is a New York standard mortgage clause which creates a separate contract between the insurer and the mortgage holder. Because this clause is a separate contract, authority interpreting similar mortgage clauses as the one above, which include the "all-terms" paragraph, have all concluded the standard mortgage clause permits the named mortgage holder to recover "to the extent allowable under the Standard Mortgage Clause."  *See Florists' Mut. Ins. Co. v. Agstar of N.M. Inc.*, 2005 WL 3664325, at *9 (D.N.M.); *see also First Nat'l Bank, Abilene Tex. v. Am. States Ins. Co.*, 134 F.3d 382, 1998 WL 30246, at *2-*4 (10th Cir.); *Colony Ins. Co. v. Peterson*,

2012 WL 1867074, at *20-*22 (M.D.N.C.), *rejected in part on other grounds by* 2012 WL

4369666 (M.D.N.C.).  In other words, the mortgage holder's coverage is defined and

limited by the express terms of the standard mortgage clause.

Here, section 2.b. expressly defines and limits the mortgage holder's recovery to

buildings and structures: "We will pay for covered loss of or damage to buildings or

structures to each mortgageholder shown in the Declarations in their order of precedence."

(Doc. 33-1 at 20).  And section 2.d. adds the right of the mortgage holder to recover this

loss payment even if the insured is denied coverage by his own acts or omissions.  (*Id.*).

Reading the mortgage clause as a whole in conjunction with the Policy, the Court agrees

the standard mortgage clause was clearly intended to expressly define and limit Witham's

recovery to the covered loss of the building and structures and to allow Witham to recover

this loss regardless of Reaching Souls's acts or omissions.  Section 2.d. was not, however,

intended to expand the limits of Witham's recovery to the same extent as the insured could

have recovered.  Thus, the "all-terms" paragraph did not expand the coverage provided by

2.b. to include business personal property.

Witham suggests that because his security interest in the property included the

buildings' contents, he is entitled to recover the value of these contents under the

mortgage clause.  (Doc. 77-1 at 25).  However, coverage under the mortgage clause does

not change based on the extent of a particular mortgage holder's security interest in the

property.  *See Cont'l Mortg. & Equity Trust v. Meridian Mut. Ins. Co.*, 969 F. Supp. 460,

464 n.5 (E.D. Mich. 1997) ("[The mortgagee] points out that the mortgage agreement

entered into between it and [the insured] grants [the mortgagee] a security interest in the

rents at Crystal Court Apartments.  This court fails to see the relevance of this fact to the

issue at hand.  Nothing contained in the Policy at issue makes [the insurer's] liability under

the Mortgagee Clause co-extensive with [the mortgagee's] security interest under the

mortgage agreement between [the insured and the mortgagee].").  Again, this is because

the limits of a mortgage holder's coverage are defined by the contractual terms between

the insurer and the mortgage holder, not by an outside agreement.  Here, Lloyd's did not

contract with Witham in the mortgage clause to include coverage of Witham's entire

security interest in Reaching Souls's property.  Whether Witham should have contracted

for a provision extending his coverage to the buildings' contents is "irrelevant to the task at

hand.  The function of the court is to enforce an unambiguous contract as made." *First

Nat'l Bank*, 134 F.3d 382, 1998 WL 30246, at *4.  Accordingly, Lloyd's is entitled to

summary judgment on this issue, and Witham is not.[15]

### III.   CONCLUSION

For the reasons stated above, Lloyd's motion for summary judgment is **GRANTED

in part and DENIED in part**.  (Doc. 74).  Witham's motion for summary judgment is

**DENIED**.  (Doc. 77).

**SO ORDERED**, this 28th day of September, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[15] Because the Policy provides the mortgage holder with coverage for only the actual cash value of the buildings and structures, Lloyd's has moved to preclude testimony of Jerry Straughan, Jr. and/or John Bechler as irrelevant pursuant to Fed. R. Civ. P. 402.  (Doc. 72).  Witham seeks to use these witnesses to offer expert opinions on the value of the business personal property.  Because Witham's potential coverage is limited to the actual cash value of the buildings and structures, Lloyd's motion to preclude Straughan's and Bechler's testimony on these matters is **MOOT**.  (Doc. 72).